**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| AMOS SUMPTOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-06-641 |
| | § | |
| HELIKON SHIPPING ENTERPRISES Ltd., | § | |
| ATHOS NAVIGATION, and M/V ATHOS, | § | |
| | § | RULE 9(h) ADMIRALTY |
| Defendants. | § | |

**ORDER DENYING DEFENDANT ATHOS NAVIGATION'S MOTION TO DISMISS**

Plaintiff Amos Sumptor ("Plaintiff") brings this action against Defendants Helikon Shipping Enterprises, Ltd., Athos Navigation ("Athos"), and the M/V ATHOS pursuant to general maritime law and 33 U.S.C. §§ 905(b), 933.  Plaintiff caused the M/V ATHOS to be arrested on the evening of October 10, 2006.  On January 2, 2007, Athos, the owner of the M/V ATHOS,  filed its Motion to Dismiss the action against the M/V ATHOS,[1] alleging that the Court lacks *in rem* jurisdiction over the M/V ATHOS.  Plaintiff timely filed a Response in Opposition to the Motion to Dismiss, and Athos filed a Reply.  For the reasons stated below, Athos's Motion is respectfully **DENIED**.[2]

**I.  Background**

On October 9, 2006, Plaintiff was working on the M/V ATHOS as a longshoreman when he

---

[1]When the Motion to Dismiss was filed, the M/V ATHOS was the only Defendant.  Athos and Helicon Shipping were added as Defendants when Plaintiff filed his First Amended Complaint.

[2]The Court does not consider this Order worthy of publication.  Accordingly, it has not requested and does not authorize publication.

allegedly lost his footing while attempting to place a wire on bundles of steel pipes. Plaintiff claims that he fell off the pipe and onto a tank-top and wooden spike, which, according to Plaintiff, caused permanently disabling injuries to his left arm and other parts of his body.

On October 10, 2006, Plaintiff retained counsel to represent him. At approximately 6:00 p.m. that evening, Plaintiff's counsel claims he learned that the M/V ATHOS was scheduled to depart Houston, Texas at 8:00 p.m., and that it was unknown whether the M/V ATHOS would ever return to this District.

Plaintiff's counsel drafted the pleadings and paperwork necessary to arrest the vessel and filed them electronically at 7:45 p.m. Next, Plaintiff claims he informed the Marshal's representative that he had filed a Motion for Issuance of Warrant electronically under exigent circumstances pursuant to Rule 3(C)(a)(ii) of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Admiralty Rules"). Plaintiff also allegedly informed the Marshal's representative that the electronic filing system does not provide an arrest warrant. The Marshal's representative apparently determined that a file stamp was sufficient because he or she dispatched U.S. Marshal Field Agent Hugo Maya to arrest the vessel.

Field Agent Maya arrested the vessel at 11:30 p.m. on October 10, 2006. On October 11, 2006, United States Magistrate Judge John R. Froeschner reviewed the electronically filed Motion for Issuance of Warrant and promptly issued an Order for Issuance of Warrant for Maritime Arrest. Athos now claims that the Court lacks *in rem* jurisdiction over the M/V ATHOS because the vessel was arrested without a warrant. Plaintiff claims that the M/V ATHOS was arrested under exigent circumstances and that a warrant signed by the Clerk was not required. Plaintiff also claims that even if a warrant were required, he corrected any defects by obtaining an Order for Issuance of Warrant

2

for Maritime Arrest the next day.[3]

## II. Legal Standard

The personification of a vessel in order to effectuate *in rem* jurisdiction is a time-honored

tradition in admiralty law. *See Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 22–23 & n.1, 80 S. Ct.

1470, 1473 & n.1, 4 L. Ed. 2d 1540 (1960) (discussing the "long-standing admiralty fiction that a

vessel may be assumed to be a person for the purpose of filing a lawsuit and enforcing a judgment").

*In rem* actions against vessels are unique to American law and stem from "the recognition that the

vessel is the offending thing and can be liable even though the owner has no *in personam* liability."

Thomas J. Schoenbaum, 2 *Admiralty and Maritime Law* 400–01 (4th ed., 2001).

A plaintiff may ensure *in rem* jurisdiction by causing the vessel to be arrested.  The procedure

involved in the arrest of a vessel, which is outlined in the Supplemental Admiralty Rules,  first

requires the Plaintiff to file a verified Complaint describing the vessel with particularity and stating

that the vessel "is within the district or will be within the district while the action is pending."

Supplemental Admiralty Rule ("Supp. Admiralty R.") C(2).   Usually, the Court reviews the

Complaint and, if appropriate, issues an Order "directing the clerk to issue a warrant for the arrest of

the vessel." Supp. Admiralty R. C(3)(a)(i).  However, if exigent circumstances exist making court

review impracticable, the attorney may obtain a warrant for the arrest of the vessel by certifying the

existence of the exigent circumstances to the clerk. Supp. Admiralty R. C(3)(a)(ii).  In such a case,

the clerk "*must* promptly issue a summons and warrant for the arrest of the vessel." *Id.* (emphasis

added).  A plaintiff who causes an arrest will be subject to damages suffered by the wrongful arrest

---

[3]Plaintiff requested a hearing under Supplemental Admiralty Rule E(4)(f).  Because the Court has ruled in Plaintiff's favor, the Court finds it unnecessary to hold such a hearing.

if it is proven that the plaintiff acted in bad faith. *See Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937).

Once the plaintiff obtains the warrant for a maritime arrest, the plaintiff delivers it to the U.S. Marshal for service. Supp. Admiralty R. C(3)(b)(i).  The U.S. Marshal will either take the arrested property into possession or, if actual possession is impracticable, "shall affix a copy thereof to the property in a conspicuous place and leave a copy of the complaint and process with the person having possession." Supp. Admiralty R. E(4)(b).

Once a vessel has been arrested, "any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest . . . should not be vacated." Supp. Admiralty R. E(4)(f).  The interested party may obtain the release of the vessel by giving security in accordance with the procedures outlined in Supplemental Admiralty Rule E(5).

## III.  Analysis

### A.  The Intent of Rule C(3)(ii)

In the instant case, Plaintiff filed his Complaint in accordance with the mandatory electronic filing rules and the procedures outlined in Supplemental Admiralty Rule C(2). *See* United States District Court, Southern District of Texas, *Administrative Procedures for Electronic Filing in Civil and Criminal Cases* (Jan. 1, 2007), *available at* http://www.txs.uscourts.gov/index.htm (mandatory electronic filing rules).  The next step, which is outlined in Supplemental Admiralty Rule C(3)(i), requires the plaintiff to obtain a Court Order before a warrant can issue.  If exigent circumstances exist and the plaintiff has made "every effort to secure judicial review, including conducting a hearing by telephone," then the Supplemental Admiralty Rules allow the plaintiff to obtain a warrant without a Court Order. Supp. Admiralty R. C(3)(ii) (Advisory Committee Notes).  In the instant case, Plaintiff

learned that the M/V ATHOS was going to depart in less than two hours, and it was unknown whether it would return to this District during the course of this litigation. Thus, circumstances were such that this Court would be most likely be unable to obtain jurisdiction over the vessel if it were not arrested promptly.

Plaintiff was, despite good faith efforts, unable to obtain a warrant and summons. Neither document is available electronically, and the Galveston Federal Courthouse was closed for the evening. The District Judge was unavailable, and the Galveston Division of the Southern District of Texas does not have a clerk available after hours. Thus, it was impossible for Plaintiff to obtain a warrant in a timely manner. The U.S. Marshal's Representative was informed by Plaintiff's counsel that Motions were now file stamped electronically rather than being hand-filed with the Clerk.[4] The U.S. Marshal apparently decided such a stamp was sufficient and executed the arrest without a warrant. Now, Athos requests that the Court dismiss the claim against the M/V ATHOS because it was arrested without a proper warrant.

Technically, the Supplemental Admiralty Rules require a warrant, even if exigent circumstances exist and no clerk is available. However, "admiralty practice . . . should not be tied to the mast of legal technicalities it has been the forerunner in eliminating from other federal practices." *British Transp. Comm'n v. U.S.*, 354 U.S. 129, 139, 77 S.Ct. 1103, 1108, 1 L. Ed. 2d 1234 (1957); *see also Cont'l Grain Co. v. The FBL-585*, 364 U.S. at 25, 80 S. Ct. at 1474 (quoting *British Transport*'s admonition). If one interprets Supplemental Admiralty Rule C(3)(ii) according to its

---

[4]Rapid technological advances that enhance convenience in some circumstances interfere with it in others. While the mandatory electronic filing rules make it more convenient for parties to file documents with the Court, they are also likely a contributing factor to the minimization of personnel in the clerk's office—and particularly in the Galveston Division's clerk's office.

technical meaning, then the lack of an after-hours clerk renders it impossible for plaintiffs to get a warrant before they can be served.  This, in turn, makes it possible for vessels to depart the shores of this District quickly after an accident has occurred on board and thus escape being held accountable—which increases the risk of personal injuries occurring on unseaworthy vessels that have been allowed to escape.  The Court prefers, in this case, to interpret the Rule in accordance with the practical application intended by the Supreme Court when it adopted the Rules and their amendments, thus following the tradition of "'admiralty's approach to do justice with slight regard to formal matters.'" *Cont'l Grain Co.*, 364 U.S. at 25, 80 S. Ct. at 1474 (quoting *Point Landing, Inc. v. Ala. Dry Dock & Shipbuilding Co.*, 261 F.2d 861, 866 (5th Cir. 1958).

_____When Supplemental Admiralty Rule C(3)(ii) was originally adopted, the clerk's office was required to issue the warrant, and no judicial scrutiny was required. *See* Supp. Admiralty R. C (Advisory Comm. Notes, 1966 Adoption).  In 1985, the Rule was amended to require judicial scrutiny in order "to eliminate any doubt as to the rule's constitutionality." *See id.* (Advisory Comm. Notes, 1985 Amendment) (citing *Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969) and other cases). The 1985 amendment also added the exigent circumstances exception, which was "intended to provide a *safety valve* without undermining the requirement of pre-arrest scrutiny" and enabled "the *plaintiff to secure the issuance* of the summons and warrant of arrest, subject to a later showing that the necessary circumstances actually existed." *Id.*  (emphasis added).  It seems the Advisory Committee anticipated that, in exigent circumstances, if the judge were not available, a clerk would be.  If there is no clerk to issue a warrant, it is impossible for the plaintiff to secure the issuance of a warrant.  Thus, the "safety valve" the advisory committee intended to release if a judge were unavailable malfunctions.

*B.  The Non-Discretionary Nature of the Issuance of a Supplemental Admiralty Rule C(3)(ii) Warrant*

_____The Court is not so presumptuous as to consider itself able to change the requirements of the plain language of the Supplemental Admiralty Rules, and the Court certainly does not advocate the arrest of vessels without a warrant.  The warrant requirement serves an extremely valid purpose: to prevent the wrongful seizure of private property.  However, given the unique facts of the instant case,[5] discussed further below, and the obvious intent of the rulemakers, the Court does not hesitate in its determination that it may justly exercise jurisdiction over the M/V ATHOS.  This determination is further buttressed by the fact that, if a clerk were available, he or she would have no discretion regarding the issuance of a warrant.  The Rule states that the clerk "*must promptly* issue a summons and a warrant." Supp. Admiralty R. C3(a)(ii) (emphasis added).  Thus, if a clerk had been available, there is no question that the warrant would have issued—and it would have issued *promptly*.  If Plaintiff had waited until the Courthouse opened the next day, the warrant would not have been promptly issued, and the M/V ATHOS would have long since sailed away from the Southern District of Texas.

*C.  The Possibility of a Cure*

_____Plaintiff claims that, even if the Court were to determine that the arrest of the M/V ATHOS

---

[5]The Court does not take lightly the Fifth Circuit's admonition that the "Federal Courts have a great responsibility to speak consistently in maritime controversies" and that "[t]hey must take care not to fashion rules and exceptions for particular circumstances without assessing their impact in other situations." *Merchs. Nat'l Bank of Mobile v. Dredge Gen. G.L.*, 663 F.2d 1338, 1347 (5th Cir. 1981).  Thus, the Court cautions that this ruling is **confined to the unique facts and unusual nature of the circumstances in the instant case**.  Plaintiff apparently explained the fact that there is not a clerk available after hours to the Marshal's representative, and a U.S. Marshal executed the arrest without an official warrant.  The Court is confident that the U.S. Marshal Service will not arrest any more vessels without a warrant, and litigators should not take this Order as an invitation to attempt to convince the U.S. Marshal Service otherwise.

was wrongful, any wrong was corrected when the Courthouse doors opened the next morning and a proper warrant was issued. Athos controverts the claim that a party may cure a wrongful maritime arrest by obtaining a warrant after the fact. The Court has been presented with no caselaw and is unable to find caselaw indicating that a party may not cure a wrongful maritime arrest by obtaining a proper warrant the next day.[6] Thus, while the Court does not necessarily agree that a plaintiff can, in usual circumstances, cure a maritime arrest made without a warrant, in these specific circumstances, the fact that Plaintiff was able to secure a valid warrant the very next morning supports the Court's conclusion that refusing to exercise jurisdiction—and thus allowing the vessel to depart this District, undaunted, when it should have been required to answer the allegations against

---

[6]Athos cites *U.S. v. James Daniel Good Real Property*, 510 U.S. 43, 56, 114 S. Ct. 492, 502, L. Ed. 2d (1993) as supportive of its position that the wrongful maritime arrest cannot be cured. *James Daniel Good Real Property* is not on point. Athos quotes the following language: "[T]he availability of a postseizure hearing may be no recompense for losses caused by erroneous seizure." *James Daniel Good Real Prop.*, 510 U.S. at 56, 114 S. Ct. at 502. This sentence, if taken out of context, seems to support Athos's point that a wrongful maritime arrest cannot be cured by a postseizure hearing. However, *James Daniel Good Real Property* involved governmental seizure of *real property* and did not involve the Supplemental Admiralty Rules. In fact, the Supreme Court distinguishes *James Daniel Good Real Property* from *Calero-Toledo*, a case involving the seizure of a yacht that was seized without advance warning, because "[f]irst, immediate seizure [of the yacht] was necessary to establish the court's jurisdiction over the property, and second, the yacht might have disappeared had the Government given advance warning of the forfeiture action." *Id.* at 57, 114 S. Ct. at 502–03 (citing *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679, 94 S. Ct. 2080, 2089, 40 L. Ed. 2d 452 (1974)). The Supreme Court astutely pointed out that "[n]either of these factors is present when the target of forfeiture is real property." *Id.*, 114 S. Ct. at 503.

Furthermore, the sentence immediately following the language Athos quoted in *James Daniel Good Real Property*, provides a major distinction between that case and the instant case. The sentence reads, "Given the congested civil dockets in federal courts, a claimant may not receive an adversary hearing until many months after the seizure." *Id. at* 56, 114 S. Ct. at 502. In maritime cases, the Supplemental Rules require a *prompt* hearing upon the request of any person claiming an interest in the arrested property. *See* Fed. R. Civ. P. Supp. R. E(4)(f). Thus, the concerns expressed by the Supreme Court regarding an *ex parte* seizure of real property are of little consequence in a maritime arrest case.

it—would be unjust.

*D.  The Absence of a Request for a Supplemental Rule E(4)(f) Hearing*

_____  Finally, the Court notes that Athos did not request a Rule E(4)(f) hearing regarding the arrest and did not even present its argument that the arrest was wrongful until it filed its Motion to Dismiss on January 2, 2007—almost three months after the arrest.[7]  Under Rule E(4)(f), any interested person having claim to the vessel could have requested, and would have received, a *prompt hearing*.  At said hearing, Plaintiff would have borne the burden of showing "why the arrest . . . should not be vacated or other relief granted." Supp. Admiralty R. E(4)(f).   If Athos believed the arrest was wrongful, the proper time to raise such a complaint was at a hearing promptly after the alleged wrongful arrest, not three months later.

## IV.  Conclusion

In accordance with the discussion above, Athos's Motion to Dismiss is **DENIED**.  Each Party is to bear its own taxable costs, attorneys' fees, and expenses incurred herein to date.


**IT IS SO ORDERED**.

**DONE** this 2nd day of March, 2007, at Galveston, Texas.



Samuel B. Kent
United States District Judge

---

[7]Instead, the M/V ATHOS was released pursuant to a $2,000,000 Letter of Undertaking. (Mot. to Dismiss Ex. D.) The Court acknowledges that said Letter specifically states that it was signed "without prejudice to any rights or defenses which the M/V ATHOS or her owners may have," and the Court does not consider it as evidence.